## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

MICHAEL HENDRIX,            )
                           )
     Plaintiff,          )
                           )
v.                         )            CV622-028
                           )
SHERIFF NOEL BROWN, *et al.*,)
                           )
     Defendants.         )

## ORDER AND REPORT AND RECOMMENDATION

The Court previously directed *pro se* plaintiff Michael Hendrix to amend his 42 U.S.C. § 1983 conditions-of-confinement and deliberate indifference to serious medical needs claims. *See* doc. 7 at 5-13. He has complied. Doc. 8. Because the Amended Complaint substantially alters the Court's analysis of the recommended disposition of Hendrix's claims, the Court's prior Report and Recommendation is **VACATED**. Doc. 7, in part. The Court's prior Order, however, is not. Doc. 7, in part.

The Court, therefore, proceeds to screen his Amended Complaint. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the

Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Hendrix is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Despite the Court's admonition that his Amended Complaint would supersede the original, *see* doc. 7 at 13, Hendrix's amendment omits critical factual background. As the Court previously summarized:

> Hendrix alleges that, in April 2020, he began to suffer from "stomach aches and bowel constipation problems." Doc. 1 at 8. He contends the problems were the result of the jail's "unsanitary food preparation, in which they serve and store cooked food below the 'safe serve temperature.'" *Id.* He submitted requests for medical attention on three consecutive days, April 19, 20, and 21. *Id.* at 9. During those days his symptoms, particularly his constipation, became progressively worse. *Id.* When other inmates brought his condition to the attention of jail staff, he "was moved to the front of the jail and isolated in a medical holding cell." *Id.* While there he was treated with "pills." *Id.* "After several hours," of progressively worsening symptoms, he was taken by ambulance to the hospital. *Id.* He was diagnosed with

> "[i]lleus," presumably "ileus,"[1] and underwent a bowel
> reconstruction. *Id.*

*Id.* at 2-3. His Amended Complaint incorporates his prior demand for relief, $9.8 million in compensatory and punitive damages. *See* doc. 8 at 9.; *see also* doc. 1 at 12. The supplemental allegations in his Amended Complaint are discussed below, as related to the respective claims.

## I.   Sheriff Brown

Hendrix's Amended Complaint is explicit that his conditions-of-confinement claim is against Sheriff Brown in his supervisory capacity. *See* doc. 8 at 10-12. "A supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity." *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2010) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).

> A causal connection can be established when a history of
> widespread abuse puts the responsible supervisor on notice
> of the need to correct the alleged deprivation and he fails to
> do so; when the supervisor's improper custom or policy
> leads to deliberate indifference to constitutional rights; or

---

[1] "Ileus" is a "[m]echanical, dynamic, or adynamic obstruction of the intestines . . . ." *Ileus*, STEADMAN'S MEDICAL DICTIONARY (2014). *Cf. Jackson v. United States*, 708 F.3d 23, 27 (1st Cir. 2013) ("ileus—failure of liquids and solids to progress along the digestive tract").

> when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008). Hendrix now explicitly alleges that the allegedly unsanitary food preparation amounts to "widespread abuse," doc. 8 at 12, rendering Sheriff Brown directly liable.

Hendrix's Amended Complaint alleges that the prisoner's food is "prepared at the county camp behind the jail and openly transported to the jail without properly being secured in a 'Hot Box,' and served at a 'safe serve temperature,' of 165 degrees." Doc. 8 at 11. As a result, the food is "exposed to all kinds of air born bacteria, which causes food poisoning, constipation[,] and other health[-]related issues . . . ." *Id.* at 11. He also alleges that the trays on which the food is served are "unsanitary . . . with scrum builded up on them." *Id.* Finally, he alleges that the amount of food served is insufficient. *Id.* (alleging "trays are not prepared according to the 2500 to 3000 calorie diet.").

A prisoner's challenge that particular conditions of his confinement violate the Eighth Amendment requires showing both an objective and subjective component. *See, e.g., Thomas v. Bryant*, 614 F.3d 1288, 1303-

04 (11th Cir. 2010). Prison officials violate the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (internal quotation and citation omitted). Although Hendrix now alleges[2] that Sheriff Brown had sufficient knowledge of the issues with the food service, *see* doc. 11 at 23, he has not alleged that the problems were sufficiently serious to satisfy the objective component of such a claim.

"The Constitution requires that prisoners be provided reasonably adequate food," but "[t]he fact that . . . food . . . sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotes and citation omitted); *see also Littlejohn v. Blanton*, 2008 WL 701385, at *3, *6 (D.S.C. Mar. 13, 2008) (prisoner is not in imminent danger of injury when he is served cold food); *Jones v. Large*, 2005 WL 2218420, at *1

_____

[2] It is not entirely clear that Hendrix has sufficiently alleged "widespread abuse." It is also unclear that his allegation that he filed grievances on three occasions, *see* doc. 8 at 11, is sufficient, independent of an allegation of widespread abuse, to allege Sheriff Brown's subjective knowledge of the food's condition. Since the Court finds that Hendrix has not sufficiently alleged the objective component of his conditions-of-confinement claim and that Sheriff Brown enjoys Eleventh Amendment immunity, it need not definitively resolve those uncertainties.

(W.D. Va. Sept. 13, 2005) (prisoner failed to allege that cold food caused him a risk of serious physical injury). Moreover, "occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs." *Chavis v. Fairman*, 51 F.3d 275 (Table), at \*3 (7th Cir. 1995). Finally, "[t]hat food trays might have sometimes appeared to be dirty or unsanitary does not constitute cruel and unusual punishment." *Shirley v. Sternal*, 2010 WL 6020684, at \*7 (S.D. Fla. Aug. 30, 2010) (citing *Blaxton v. Boca Grande Foods*, 2008 WL 4888852 (N.D. Fla. Nov. 12, 2008)); *see also Bennett v. Misner*, 2004 WL 2091473, at \*20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, [nor] temporary lapses in sanitary food service . . . are sufficiently serious to constitute an Eighth Amendment violation."). Hendrix's allegations, therefore, do not identify a condition "so grave that it violates contemporary standards of decency . . . ." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Hendrix's Amended Complaint is also clear that Sheriff Brown is sued in his official capacity. *See* doc. 8 at 2. In that capacity, Sheriff Brown is entitled to Eleventh Amendment immunity. *See, e.g., Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1325 (11th Cir. 2005) (quoting *Manders v. Lee,* 228 F.3d 1304, 1305 (11th Cir. 2003))

(holding that "[A Georgia] sheriff's 'authority and duty to administer the jail in his jurisdiction flows from the State, not the County.'" (alteration omitted)); *Hood v. Lawrence,* 2022 WL 889964, at \*5 (S.D. Ga. Mar. 25, 2022) ("[I]n late 2016, the Eleventh Circuit held that sheriffs *are* 'arms of the state' in providing food to inmates . . ." (citing *Lake v. Skelton*, 840 F.3d 1334, 1340-41 (11th Cir. 2016)).   Thus, even if Hendrix had established a constitutional violation, Sheriff Brown is immune from suit in his official capacity.  *See, e.g., Jackson v. Walker*, 2010 WL 1413196, at \*3 (M.D. Ga. Mar. 30, 2010).

Since Hendrix's Amended Complaint fails to sufficiently allege the objective component of his conditions-of-confinement claim, and because Sheriff Brown, in his official capacity, is immune from suit, that claim should be **DISMISSED**.

## II.   Deliberate Indifference to Serious Medical Needs

Showing that a prison official was deliberately indifferent to a prisoner's serious medical needs requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury.  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  Whether a serious medical need

existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must plead facts sufficient to show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal citations and quotation omitted).

As before, there remains some question about when Hendrix's symptoms rose to the level of a serious medical need. *See* doc. 7 at 9-10. "A medical need that is serious enough to satisfy the objective component [of an Eighth Amendment claim] is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326. Stomach aches and constipation do not ordinarily rise to that level. *See, e.g., Ross v. McGinnis*, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) ("[C]omplaints of abdominal pain, vomiting, heartburn, [and] constipation . . . did not constitute a

serious medical need."). His amended allegations do not suggest that his symptoms rose beyond the level of ordinary digestive issues before he was taken for medical care.

Regardless of whether Hendrix has alleged a sufficiently serious medical need, his allegations show that Nurse Lynn was not "indifferent" to his condition, even if her attempted treatment was ineffective or even negligent. *See* doc. 8 at 13-14. He expressly alleges that Lynn "administered medicine," specifically a stool softener. *Id.* Moreover, he alleges that she "tried to remedy [his] condition herself unprofessionally." *Id.* at 14. While Hendrix's allegations might rise to the level of medical malpractice, they do not allege "deliberate indifference." *See, e.g., Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Lamb v. Norwood,* 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate

wants."). Accordingly, his claim against Nurse Lynn[3] should be **DISMISSED**.

## III.   State Constitutional Claims

Although it is not entirely clear, Hendrix's original Complaint suggests that the facts alleged implicate his rights under the Georgia Constitution. *See* doc. 1 at 8. His Amended Complaint, too, refers to the Georgia Constitution. *See* doc. 8 at 3, 6. However, this Court "has found no authority allowing a plaintiff to bring a private cause of action under the Georgia Constitution. Rather, the authority indicates there is no such right." *Hammond v. Dozier*, 2020 WL 8093576, at *3 (S.D. Ga. Nov. 24, 2020) (collecting cases); *see also, e.g., Davis v. Standifer*, 621 S.E.2d 852, 855 (Ga. Ct. App. 2005) ("Even where the plaintiff alleges a state constitutional violation, if the underlying conduct complained of is tortious and occurred within the scope of the state employee's official

---

[3] Hendrix expressly alleges that Nurse Lynn is sued in her official capacity. *See* doc. 8 at 2. However, sheriffs and their employees also enjoy Eleventh Amendment immunity against medical care claims. *See Hood*, 2022 WL 889964, at *5 (noting "district courts have (apparently unanimously) . . . concluded that a sheriff is an arm of the state (along with his deputies) when providing medical services to inmates." (citations omitted)). Since the Court concludes that Hendrix's allegations are inconsistent with a deliberate indifference claim against Nurse Lynn, it need not consider the more complicated question of her immunity.

duties, the employee is protected by official immunity under the [Georgia Tort Claims Act].").   Accordingly, to the extent plaintiff asserts any claims based on alleged violations of the Georgia Constitution, those claims should be **DISMSSED**.

## IV.   Conclusion

For the reasons discussed above, Hendrix's conditions-of-confinement claim against Sheriff Brown and his claim that Nurse Lynn was deliberately indifferent to his serious medical needs should be **DISMISSED**.   *See* 28 U.S.C. § 1915A(b).   To the extent that he asserts any claim for violation of his rights under the Georgia Constitution, those claims should also be **DISMISSED**.   This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within fourteen days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections

should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 16th day of May, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA